FILED
CLERK, U.S. DISTRICT COURT

07/07/16

CENTRAL DISTRICT OF CALIFORNIA
BY: GR DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON LEE THACKER,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>Defendant. | Case No. CV 15-03638-RAO<br><br>**MEMORANDUM OPINION AND ORDER** |

## I. INTRODUCTION

Plaintiff Jason Lee Thacker ("Plaintiff") challenges the Commissioner's denial of his application for a period of disability and disability insurance benefits ("DIB"). For the reasons stated below, the decision of the Commissioner is AFFIRMED.

## II. PROCEEDINGS BELOW

On August 28, 2012, Plaintiff protectively applied for DIB alleging disability beginning May 27, 2012. (Administrative Record ("AR") 130-31). His application was denied initially on June 27, 2013, and upon reconsideration on November 8, 2013. (AR 56-78.) On November 15, 2013, Plaintiff filed a written request for

hearing, and a hearing was held on July 29, 2014. (AR 34-55, 93-94.) Represented by counsel, Plaintiff appeared and testified, along with an impartial vocational expert. (AR 38-54.) On September 24, 2014, the Administrative Law Judge ("ALJ") found that Plaintiff had not been under a disability, pursuant to the Social Security Act,[1] since May 27, 2012. (AR 21.) The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. (AR 1-6.) Plaintiff filed this action on May 14, 2015. (Dkt. No. 1.)

The ALJ followed a five-step sequential evaluation process to assess whether Plaintiff was disabled under the Social Security Act. *Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995). At **step one**, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 27, 2012, the alleged onset date ("AOD"). (AR 14.) At **step two**, the ALJ found that Plaintiff has the following severe impairments: chronic pulmonary insufficiency; ischemic heart disease; degenerative disease of the cervical spine; degenerative disease of the lumbar spine; and obesity. (*Id*.) At **step three**, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (AR 15.)

Before proceeding to step four, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to:

> [P]erform a range of light work . . . . Specifically, the claimant can sit six hours in an eight-hour day; stand and walk six hours in an eight-hour day; lift and carry 20 pounds occasionally and 10 pounds frequently; and occasionally climb stairs, balance, stoop, kneel, crouch, and crawl. The claimant is precluded from the following: climbing ladders, scaffolds, or ropes; working or walking on uneven terrain; working at unprotected heights, or near dangerous or fast

---

[1] Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment expected to result in death, or which has lasted or is expected to last for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A).

> moving machinery; working in extreme temperatures, both hot and cold; and exposure to dust, fumes, and gases.

(AR 15.)

At **step four**, based on the Plaintiff's RFC and the VE's testimony, the ALJ found that Plaintiff is capable of performing past relevant work as a secondary school teacher, food service manager, and deli cutter. (AR 20.) Accordingly, the ALJ did not proceed to **step five**, and instead, found that Plaintiff has not been under a disability from the AOD through the date of the decision. (AR 21.)

## III. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. A court must affirm an ALJ's findings of fact if they are supported by substantial evidence, and if the proper legal standards were applied. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). An ALJ can satisfy the substantial evidence requirement "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citation omitted).

"[T]he Commissioner's decision cannot be affirmed simply by isolating a specific quantum of supporting evidence. Rather, a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Secretary's conclusion." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001) (citations and internal quotations omitted). "'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (citing *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)); *see also Robbins*, 466 F.3d at 882

("If the evidence can support either affirming or reversing the ALJ's conclusion, we may not substitute our judgment for that of the ALJ."). The Court may review only "the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (citing *Connett v. Barnhart,* 340 F.3d 871, 874 (9th Cir. 2003)).

## IV. DISCUSSION

Plaintiff's sole contention is that the ALJ erred in finding his subjective complaints not credible. (Memorandum in Support of Plaintiff's Complaint ("Pl. Memo.") at 4-9, Dkt. No. 18.) The Commissioner contends that the ALJ properly evaluated Plaintiff's credibility. (Memorandum in Support of Defendant's Answer ("Def. Memo.") at 2-8, Dkt. No. 22.) For the reasons below, the Court agrees with the Commissioner.

### A. The ALJ's Credibility Determination Is Supported By Substantial Evidence

Plaintiff argues that the ALJ's finding that his subjective complaints are not fully credible is unsupported by clear and convincing evidence. *See* Pl. Memo. at 4-9. The Commissioner argues that the ALJ's reasons for finding Plaintiff not fully credible are supported by substantial evidence. *See* Def. Memo. at 2-8.

#### 1. Plaintiff's Testimony

At the administrative hearing, Plaintiff testified that he was born on September 27, 1958, and has a degree in business. (AR 38.) He last worked in February 2013 for one day, and prior to that, he last worked in May 2012 as a machine operator and forklift operator in a warehouse. (AR 39.) Prior to the warehouse job, Plaintiff worked in the restaurant business for approximately 25 years. (*Id.*)

Plaintiff testified that he has been diagnosed with COPD. (AR 39.) He smokes about half a pack of cigarettes per day, and has smoked about 30 years, despite doctors telling him "continuously" to stop. (AR 39-40.) Because of the

4

COPD, he "can't hardly breathe standing up," "[c]an't walk for any period of time or distance," and "[e]ven carrying on a conversation for any period of time tends to wind me." (AR 40.) He does not take any medications for the COPD, but is waiting for a referral "to a . . . person that deals with that thing." (*Id.*)

Plaintiff testified that he has ischemic heart disease, for which he currently takes aspirin. (AR 40-41, 46.) He was referred to a cardiologist who gave him nitroglycerin for "emergency onset," which he had to use once about two months ago when his mother was admitted to the hospital and he had "major stress factors that had affected [him] dramatically." (AR 41, 46-47.) Prior to seeing the cardiologist, he was treated with aspirin and medication for cholesterol. (AR 41.)

Plaintiff testified that he has chronic lower back pain, he "can't stand for any period of time," and he must stand up and move around after sitting for 30-45 minutes. (AR 41, 43.) He cannot stand "even 20 minutes without pain." (AR 43.) He "probably couldn't even walk a quarter mile without having to stop, lean on my cane for a little while." (*Id.*) He takes his cane "everywhere," but did not bring it to the hearing because he did not expect to be standing for any period of time. (*Id.*) He can lift and carry about 20-25 pounds. (*Id.*) He takes 800 milligrams of ibuprofen for the back problem, which makes the pain "bearable." (AR 41.) The ibuprofen reduces his pain to "about a four," unless he goes shopping and "it's a 10 and I just got to sit down and rest for a while." (AR 42.)

Plaintiff testified that he has diabetes, which is treated with Metformin and Glipizide. (AR 42.)

Plaintiff testified that he can drive, but has difficulty turning his neck due to surgery 12-15 years ago. (AR 44, 46.) He does not have difficulty dressing himself or showering, except he must use a shower bench. (AR 44.) He cooks by "set[ting] it up on the stove and then go[ing] and sit[ting] while it cooks." (*Id.*) He lives with a friend and no longer does sweeping, mopping, or vacuuming, and his friend does the laundry. (*Id.*) He goes grocery shopping and uses a cane or a basket to lean on.

(AR 44-45.)

Plaintiff testified that there has been no treatment that was recommended that he has not received. (AR 47.) He cannot work because he "would be crippled, unable to move out of bed by the end of the week" because of "manipulation of the back." (AR 49.) He lays down for about an hour every afternoon for "recuperative time," and he sits for about an hour. (AR 49-50.) He feels lightheaded twice a week or once a month, depending on what he is doing. (AR 50.)

Plaintiff completed a function report on January 19, 2013. (AR 177-84.) He reported that he lives in a house with his mother. (AR 177.) He helps his mother by fixing meals, taking her to doctor appointments once a month, and doing her laundry once a month. (AR 178.) He takes care of his pets by feeding them, letting them run, and cleaning up after them once a day. (*Id.*) He fixes simple meals for himself, which takes him about 30 minutes. (AR 179.) He sweeps the floors twice a week, mops once a month, and does laundry for 30 minutes once a week. (*Id.*) He drives and can go out alone. (AR 180, 184.) He shops for groceries and household necessities once a month for over an hour. (AR 180.) He chats outside with neighbors about twice a week. (AR 181.) He can lift 15 pounds, cannot bend without holding on, cannot stand for over 10 minutes, cannot walk over a mile, cannot sit more than 15 minutes, and cannot stand up from kneeling. (AR 182.)

Plaintiff completed an exertion questionnaire on October 26, 2013. (AR 223-29.) He reported that he lives in a mobile home with family. (AR 223.) He can climb stairs, do his own grocery shopping, clean his home, drive a car for about 15 miles, and do yard work by trimming rose buds, watering, and spraying. (AR 224, 228.) Making the bed takes about 10 minutes, washing dishes takes about 15 minutes, cooking takes about 30 minutes, sweeping takes about 30 minutes, mopping takes about an hour, laundry takes all day because he rests between loads, and collecting trash takes about 10 minutes. (AR 227.) He can do housework for about 30 minutes, and then he needs to rest for about 15 minutes. (AR 228.) He

gets pain in his lower back when he fixes dinner, so he sits on a stool when preparing meals. (AR 226.) He sweeps and mops the floor in stages because of pain in his lower back. (*Id.*) He walks about a quarter mile per day, but upon returning, he has to sit down to rest before climbing the steps into the house because his legs are sore, he is out of breath, and his back is in pain. (AR 226-27.) He can carry two or three bags of groceries from the car to the kitchen, and can lift his mother's wheelchair in and out of the car. (AR 227.) He requires two rest periods during the day, each about an hour, and he sleeps in the mid-afternoon for two hours. (AR 225, 229.) He uses a cane when he walks around the park. (*Id.*)

### 2. Applicable Legal Standards

"In assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of symptoms, the ALJ engages in a two-step analysis." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (citing *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (quoting *Lingenfelter*, 504 F.3d at 1036) (internal quotation marks omitted). If so, and if the ALJ does not find evidence of malingering, the ALJ must provide specific, clear and convincing reasons for rejecting a claimant's testimony regarding the severity of his symptoms. *Id.* The ALJ must identify what testimony was found not credible and explain what evidence undermines that testimony. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). "General findings are insufficient." *Lester*, 81 F.3d at 834.

### 3. Discussion

"After careful consideration of the evidence," the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms;" but found that Plaintiff's "statements concerning the intensity,

persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (AR 17.) The ALJ relied on the following reasons: (1) activities of daily living; (2) lack of supporting objective evidence; and (3) routine and conservative treatment. (*Id.*) No malingering allegation was made, and therefore, the ALJ's reasons must be "clear and convincing."

### a. Reason No. 1: Activities of Daily Living

The ALJ found that Plaintiff "described activities of daily living, which are not limited to the extent one would expect, given his complaints of disabling symptoms and limitations," noting that Plaintiff indicated that he could perform a variety of household chores and yard work, and could take care of his mother and feed his pets. (AR 17.) The ALJ also found that Plaintiff made inconsistent statements regarding his activities of daily living. (*Id.*)

Inconsistencies between symptom allegations and daily activities may act as a clear and convincing reason to discount a claimant's credibility, *see Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991), but a claimant need not be utterly incapacitated to obtain benefits. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). The fact that Plaintiff carried on daily activities such as limited cooking, limited walking, limited household chores, and limited care for his mother and pets does not detract from his overall credibility, as the record does not show that these activities consumed a substantial part of Plaintiff's day. *See Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001). Further, the mere ability to perform some tasks is not necessarily indicative of an ability to perform work activities because "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication." *Fair*, 885 F.2d at 603; *see also Molina*, 674 F.3d at 1112-13 (the ALJ may discredit a claimant who "participat[es] in everyday activities indicating capacities that are transferable to a work setting"). The critical difference between such activities "and activities in a

full-time job are that a person has more flexibility in scheduling the former . . . , can get help from other persons . . . , and is not held to a minimum standard of performance, as she would be by an employer." *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) (cited with approval in *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014)). Indeed, Plaintiff stated that he needs rest periods every day, and on days he takes his mother to a doctor's appointment, he does not do housework that day because of the added strain. (AR 49-50, 226, 228.) The ALJ did not discuss these limitations on Plaintiff's daily activities.

The ALJ also noted specific inconsistent statements regarding Plaintiff's activities of daily living. (AR 17.) He noted that Plaintiff inconsistently testified that he needed assistance doing laundry and sweeping, while he earlier reported that he could do his mother's laundry and sweep the floor within 30 minutes. (AR 17.) According to the record, Plaintiff testified at the hearing in 2014 that he no longer did laundry and sweeping, and he reported in the 2013 function report and exertion questionnaire that he performed laundry and sweeping on a limited basis. (AR 44, 179.) He did not give a reason for giving up laundry and sweeping, but he did testify that he moved in with a friend and his friend did his laundry. (AR 44.) The ALJ also noted that Plaintiff's testimony about needing a cane to walk was inconsistent with his failure to bring the cane to the hearing. (AR 17.) According to the record, Plaintiff testified that he did not bring the cane to the hearing because he "didn't expect to be standing for any period of time." (AR 43.) Plaintiff specified that he takes his cane when he walks around the park or goes shopping. (AR 42-43, 229.) The inconsistencies identified by the ALJ are not clear and convincing.

The Court finds that this reason is not a clear and convincing reason, supported by substantial evidence, to discount Plaintiff's credibility.

### b. Reason No. 2: Lack of Supporting Objective Evidence

The ALJ also discounted Plaintiff's credibility because his "allegations are

9

greater than expected in light of the objective evidence of record." (AR 17.)

As the ALJ noted, the evidence in the record regarding Plaintiff's heart condition was limited and showed only mild findings. (AR 17.) Prior to the AOD, Plaintiff underwent a left heart catheterization, coronary angiography, and left ventriculography. (AR 17, 249.) Plaintiff was diagnosed with mild triple vessel disease and mild left ventricular dysfunction, and his chest pain was determined to be non-cardiac in origin. (AR 17, 264.) Since the AOD, Plaintiff had normal heart examinations with regular rhythm and no organic murmur. (AR 17, 286-306, 320-28.) In January 2013, an abnormality was found with respect to Plaintiff's heart. (AR 17, 310.) A referral to a cardiology specialist in October 2013 indicated that Plaintiff had sinus arrhythmia and early repolarization, but stable bradycardia and no acute distress. (AR 17-18, 320-28.) Diagnostic imaging of Plaintiff's chest in May 2013 and June 2013 indicated that Plaintiff's heart and mediastinum were normal. (AR 18, 284, 317.) Plaintiff was prescribed nitroglycerin as needed, and no aggressive treatment was recommended or anticipated. (AR 18, 320-28.)

The ALJ noted that the evidence in the record regarding Plaintiff's pulmonary insufficiency indicated mild findings and a lack of treatment. (AR 18.) A May 2013 pulmonary function test indicated borderline obstructive lung disease with no evidence of bronchospasm or acute respiratory illness. (AR 18, 280.) A June 2013 chest x-ray indicated that Plaintiff's lungs were free of active infiltrates, there was no evidence of pleural effusion or pneumothorax, the trachea was in normal position. (AR 18, 317.) Physical examinations showed that Plaintiff's lungs were clear to auscultation bilaterally. (AR 18, 286, 288, 290, 293, 295, 299, 300, 302, 304, 324.) The record reflected no treatment for Plaintiff's lung condition, and Plaintiff testified that he had received no treatment for this alleged impairment. (AR 17, 40.)

Regarding Plaintiff's alleged back impairment, the ALJ noted that the record evidence showed mild findings and that the condition was stable and controlled

through medication treatment. (AR 18.) A medical provider evaluation dated May 27, 2014, indicated that Plaintiff was taking ibuprofen, which Plaintiff testified was effective in reducing his pain to a four on a scale of ten.[2] (AR 18, 41-42, 332.) Diagnostic imaging on June 11, 2014, indicated prominent osteoarthritic changes involving the upper and mid lumbar spine, and mild scoliosis of the lumbar spine. (AR 18, 333.)

A January 24, 2013 Physical Health Disability Assessment Services referral form indicates that Plaintiff was limited to lifting five pounds and was unable to perform prior work. (AR 308-11.) The ALJ discounted the opinion because the assessment was unsupported, the form contained no signature or information regarding the author of the assessment, and the assessment was inconsistent with the mild findings in the record and Plaintiff's own testimony that he could lift 20-25 pounds. (AR 20, 43.)

Azizollah Karamlou, M.D., conducted an internal medicine consultation on March 14, 2013. (AR 273-77.) A physical examination of the heart revealed regular sinus rhythm without evidence of enlargement, heaves or thrills; point of maximal impulse in the fifth intercostal space; S1 and S2 sounds normal; and no murmurs or gallops. (AR 19, 275.) Examination of the lungs indicated a few rhonchi and crackles in both lung fields, but no wheezing. (*Id.*) A musculoskeletal examination revealed local tenderness with no evidence of muscle spasm or radiculopathy in the cervical spine, range of motion of the cervical spine was grossly within normal limits, mild scoliosis of the thoracolumbar spine since age nine not needing surgical intervention, and otherwise unremarkable lumbar spine. (*Id.*) Dr. Karamlou diagnosed Plaintiff with the following: (1) history of ischemic heart disease with mild cardiac infarction in the past; current chest pain which is atypical in nature and dyspnea on exertion and strenuous activities; (2) chronic

---

[2] Treatment records indicate that Plaintiff was not taking ibuprofen as of December 5, 2013. (AR 322.)

obstructive pulmonary disease consisting of heavy smoking, chronic bronchitis, element of emphysema associated with dyspnea on exertion, and easy fatigability; not receiving any specific inhaler; and (3) injury to the cervical spine along with removal of lipoma in the posterior neck which is non-specific in nature. (AR 19, 277.) Dr. Karamlou opined that Plaintiff could stand and/or walk for six hours in an eight-hour workday with normal breaks, sit for six hours in an eight-hour workday with normal breaks, and lift and carry 20 pounds occasionally and 10 pounds frequently. (*Id.*) Plaintiff could not walk on uneven terrain, climb ladders or work at unprotected heights, or be exposed to extreme cold and hot temperatures, dust and chemicals. (*Id.*) The State agency medical consultants opined that Plaintiff could perform a range of light work. (AR 19, 62-63, 74-76.)

A Medical Provider Evaluation from Mission City Community Network dated May 27, 2014 indicates that Plaintiff was temporarily disabled from the date of the evaluation to August 27, 2014. (AR 20, 332.) The ALJ discounted the evaluation because it was inconsistent with the treatment record, which revealed mild findings. (AR 20.)

Plaintiff argues only that the ALJ may not discredit his testimony solely on the lack of supporting objective evidence. (Pl. Memo. at 9.) The Court agrees, but as discussed herein, the ALJ did not rely solely on this reason. *See Burch*, 400 F.3d at 681.

The ALJ found that the treatment record as a whole revealed mild findings relating to Plaintiff's alleged heart condition, chronic pulmonary insufficiency, and back impairments. (AR 17-20.) In light of the objective evidence discussed, the Court finds that the ALJ's determination is supported by substantial evidence.[3]

---

[3] On February 25, 2015, Plaintiff submitted additional documents to the Appeals Council, consisting of medical records from Pain Therapy Solutions dated October 22, 2014 through December 17, 2014. (AR 334-49.) The Appeals Council considered the additional evidence and made the evidence part of the record, despite Plaintiff's request to the Appeals Council to open a new application based

The Court finds that this is a clear and convincing reason, supported by substantial evidence, for discounting Plaintiff's credibility.

### c. Reason No. 3: Routine and Conservative Treatment

Finally, the ALJ discounted Plaintiff's credibility because "[t]he treatment records revealed mild findings and routine, conservative, and non-emergency treatment since the alleged onset date." (AR 17.) An ALJ may discount a claimant's credibility based on routine and conservative treatment. *See Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) (evidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment); *see also Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (rejecting plaintiff's complaint "that she experienced pain approaching the highest level imaginable" as "inconsistent with the 'minimal, conservative treatment' that she received").

---

on "new evidence that may not relate back in time to the period adjudicated by ALJ." (AR 1-5, 334-49.) The Court finds that the additional evidence post-dates that ALJ's decision and agrees that it may not relate back to the relevant time period on or before the date of the ALJ's September 24, 2014 decision. However, because the Appeals Council considered the additional evidence and made it part of the record, the Court must consider it. *See Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1163 (9th Cir. 2012) ("[W]hen the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence.") (citation omitted). The additional evidence shows that Plaintiff was taking ibuprofen 800 mg on October 22, 2014 and December 17, 2014, Plaintiff had back and left shoulder tenderness and decreased range of motion, and diagnostic SI joint injection and left trapezius trigger point injections were discussed. (AR 338, 341-42.) An October 30, 2014 MRI of the lumbar spine indicated early schmorl's node formation at L1-L2 and L2-L3, cupping of the inferior endplate at L3, L4-L5, and L5. (AR 349.) A November 6, 2014 MRI of the left shoulder showed mild effusion within the bursa of the left shoulder, hypertrophy of the left acromioclavicular joint resulting in mild-to-moderate impingement upon the rotator cuff, and multiple small rounded subchondral cysts. (AR 344-45.) Even in light of the additional evidence, which post-dates the ALJ's decision, the ALJ's determination is supported by substantial evidence.

Plaintiff argues that he takes ibuprofen (800 mg) for pain control. (Pl. Memo. at 9) (citing *Horton v. Astrue*, 252 F. App'x 160, 161 (9th Cir. 2007) (it is error for an ALJ to characterize 800 mg tablets of ibuprofen on a prescription basis as "over-the-counter").) The Commissioner argues that Plaintiff received no treatment for his alleged chronic pulmonary insufficiency, and his only pain treatment is by non-narcotic pain medication. (Def. Memo. at 3-4) (citing *Osenbrock v. Apfel*, 240 F.3d 1157, 1166 (9th Cir. 2001) (claimant not credible where he "has not participated in any significant pain regimen or therapy program: and where he "has not been using a strong Codeine or Morphine based analgesics that are commonly prescribed for severe and unremitting pain").)

The record shows that Plaintiff received no treatment for his pulmonary insufficiency; he took aspirin and cholesterol medication and was referred to a cardiologist for his heart problem; the cardiologist did not recommend any aggressive treatment or prescribe a specific heart medication; the ibuprofen was effective in reducing Plaintiff's back pain to a four; and his diabetes was controlled with medication. (AR 40-41, 47, 273, 286-316.) *See also Warre v. Comm'r, Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (stating that "[i]mpairments that can be controlled effectively with medication are not disabling for purposes of determining eligibility for SSI benefits."). It is unclear when Plaintiff started taking ibuprofen for his back pain, but he was not taking it as of December 5, 2013, and he was taking it as of May 27, 2014. (AR 322, 329-32.) The records from Pain Therapy Solutions start on October 22, 2014, after the date of the ALJ's decision. (AR 340-42.) Plaintiff did not take narcotic medication. (AR 46.)

Based on the record as a whole, substantial evidence supports the ALJ's determination that Plaintiff's treatment was conservative. Plaintiff was treated with aspirin, cholesterol and diabetes medications, and ibuprofen 800 mg (commencing after December 5, 2013) that was effective in reducing his back pain. *See, e.g., Thomas v. Colvin,* 2016 WL 1733418, at *8-9 (C.D. Cal. Apr. 29, 2016) (affirming

ALJ's conservative treatment finding where plaintiff received physical therapy and took prescription Motrin and naproxen for pain); *Simmons v. Colvin*, 2014 WL 2215863, at *5 (C.D. Cal. May 29, 2014) (affirming ALJ's conservative treatment finding where plaintiff took, at various times, no medication, Tylenol Extra Strength, prescription-strength Tylenol, and ibuprofen 800 mg and Gabapentin 300 mg, which took away some of the pain, and used Icy-Hot); *Cusimano v. Astrue*, 2013 WL 178148, at *16 (N.D. Cal. Jan. 16, 2013) ("Plaintiff . . . received conservative pain treatment, . . . [including] prescriptions for Tylenol, Motrin, acetaminophen, and ibuprofen.") Furthermore, aggressive treatment was not discussed, and Plaintiff did not see a pain specialist until after the ALJ's decision. *See Davis v. Colvin*, 2015 WL 5255353, at *11 (E.D. Cal. Sept. 9, 2015) (affirming ALJ's conservative treatment finding where plaintiff had not been referred to a pain specialist, or received specialized treatment to alleviate his pain, and where the record lacked evidence that surgery or any other aggressive treatment had been recommended).

The Court finds that this is a clear and convincing reason, supported by substantial evidence, for discounting Plaintiff's credibility.

### 4. Conclusion

Since the Court found that one of the ALJ's reasons for discounting Plaintiff's credibility—activities of daily living – is not clear and convincing, the Court must decide whether the ALJ's reliance on that reason was harmless error. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008). The relevant inquiry "is not whether the ALJ would have made a different decision absent any error," but whether the ALJ's decision is still "legally valid, despite such error." *Id.* The "remaining reasoning *and ultimate credibility determination* [must be] . . . supported by substantial evidence in the record." *Id.* (emphasis in original) (citing *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004)). Here, given the discussion above concerning the lack of supporting

objective evidence and the nature of Plaintiff's treatment, the Court concludes the ALJ's credibility finding is legally valid and supported by substantial evidence.

## V. CONCLUSION

IT IS ORDERED that Judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED: July 7, 2016

ROZELLA A. OLIVER
UNITED STATES MAGISTRATE JUDGE

**NOTICE**

**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN WESTLAW, LEXIS/NEXIS, OR ANY OTHER LEGAL DATABASE.**